UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| PAUL HABER, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:07-cv-1447-LJM-WTL |
| | ) | |
| BIOMET, INC. and | ) | |
| BIOMET ORTHOPEDICS, INC., | ) | |
|     Defendants. | ) | |

## ORDER

This cause is now before the Court on plaintiff's, Paul Haber ("Haber"), Motion to Compel Arbitration and to Stay State Court Proceedings, and on defendants', Biomet, Inc., and Biomet Orthopedics, Inc. (collectively, "Biomet" or "Defendants"), Motion to Dismiss Plaintiff's Complaint to Compel Arbitration and Motion for Oral Argument on Plaintiff's Motion to Compel Arbitration. The Court rules as follows:

Haber asks this Court to compel arbitration of the controversy in which he and his new employer are engaged with his prior employers Biomet, Inc. and Biomet Orthopedics, Inc. (collectively, "Biomet" or "Defendants"). Haber asserts that Defendants have contractually agreed to arbitrate any and all employment termination disputes; Defendants disagree.

Haber marketed and sold Biomet products over the course of several years. The parties signed letter agreements over the course of their association that attempted to define the relationship between them. The parties agree that an employment agreement signed in October 1999 (the "October 1999 Agreement") contains an arbitration clause. Specifically, the October 1999 Agreement includes the following language:

> 16. <u>Dispute Resolution</u>.
> A. Scope. Any controversy, demand, claim, dispute, action, cause of action arising from or in any way connected with this agreement, the breach, termination or invalidity thereof, or the distributorship relationship between or among the parties, whether in tort, contract or otherwise, including but not limited to, all fraud claims, statutory claims, claims under any dealer or franchise act, antitrust claims, or any other civil claims or causes of action of any kind or nature (collectively referred to as a "dispute"), arising at any time, shall be fully and finally resolved according to the dispute resolution procedures set forth in this paragraph 16, which are the sole and exclusive procedures for the resolution of any and all disputes.

The October 1999 Agreement goes on to bind the parties to arbitration governed by the United States arbitration Act, 9 U.S.C. §§ 1-16, and requires that arbitration take place in Chicago, Illinois.

The parties also agree that another written agreement between Haber and Biomet is contained in a letter agreement effective May 26, 1995. Several modifications of the May 26 letter followed, some before the October 1999 Agreement and some after. Specifically, the 1995 letter begins the relationship between the parties and purports to define the territory in which Haber will represent Biomet. It sets out the obligations of the parties but does not contain an arbitration clause. It does contain a separate trademark and licensing agreement. In June of 1995 the parties agree, among other things, to an amendment and increase the territory given to Haber. It specifically refers to the May 1995 letter and is expressly an amendment to that agreement.

On February 14, 1996, the parties agreed to another amendment of the May 1995 agreement. The amendment refers to the May agreement and is also expressly an amendment to the May letter. It merely reduces the subject territory by one county.

On February 28, 1996, another amendment to the May 1995 letter is signed by both parties. Again there is a clear reference to the May letter and deletes one more county from Haber's territory. Another amendment is signed on March 8, 1996, with a clear reference to the May letter and this time reduces the territory by three counties.

Yet another amendment to the May 1995 letter is signed on September 29, 1997, referencing the May letter and the above amendments. Two more counties are dropped from Haber's territory, one of which, notably, is Sarasota County. A November 2, 1998, amendment is signed referencing the May letter and the rest of the letters. Another county is dropped from Haber's territory therein.

These amendments are followed by an April 1, 1999 amendment, which refers to the May letter and all of the prior amendments. Like the others before it, this amendment is expressly an amendment to the May 1995 letter agreement. Therein there is an agreement to reduce commissions. Next is a May 26, 2001, amendment, referencing the May 1995 letter and all the subsequent amendments. Several more accounts and counties are deleted from Haber's responsibilities.

A June 30, 2001, amendment is signed referencing all the prior letters and deleting further territory and accounts from Haber's responsibility. A similar amendment to the letter agreement of May 1995, referencing it and all the other letters became effective December 28, 2001. The last expressed amendment to the May 25, 1995, letter agreement is dated February 25, 2005. That agreement reduced territory provided for sales overrides in the removed territories.

On April 6, 2007, Haber notified Biomet in writing that he was terminating his sales/distribution relationship with them as of May 6, 2007. In July, Biomet sued Haber in a Marion County, Indiana, court alleging that the Huber's relationship with his new employer and the way in which that relationship was formed gave Biomet several causes of action against both Huber and his new employer. Biomet then voluntarily dismissed the complaint without serving Haber with a copy of the summons or the complaint.

In September 2007, Biomet sued Haber again in a Hamilton County, Indiana, court alleging the same causes of action and, again, never served Haber with a summons or a complaint. The state

3

court complaint alleges six claims against Haber, all of which clearly arise out of an alleged breach of the business relationship. Haber requests that this Court require the arbitration contemplated in the 1999 Agreement and stay the state court proceeding pending arbitration.

A review of all the relevant letter agreements and amendments makes it evident that when the parties intended to amend the May 1995 letter of agreement they did so by clearly referencing it and the prior amendments in the body of the amendments and by calling them amendments to the May letter agreement. The October 1999 Agreement is the only correspondence between the parties that mentions arbitration. The letter adds Sarasota County back into Haber's territory and does not reference the May 1995 letter nor any of the amendments to that letter agreement. Nor does it call itself an amendment to the May 1995 agreement.

In addition, paragraph 3 of the October 1999 Agreement indicates that it includes any ancillary agreements attached to or incorporated in letter. No reference is made to the May 1995 letter or any of the amendments thereto, nor are any of those items attached. This court concludes that the October 1999 Agreement governs only the Sarasota territory and does not apply across the board to the entire relationship between Huber and Biomet because the October 1999 Agreement does not reference the May 1995 agreement or any of its amendments, because the October 1999 Agreement is the only agreement that adds a previously subtracted territory, because no other agreement or amendments are attached to it, and because the October 1999 Agreement has a separate detailed termination section. It is apparent that Haber and Biomet treated the Sarasota County territory in a different way than they treated the remaining counties and accounts. It is also apparent that they continued to do so throughout their relationship.

Huber suggests that the post October 1999 amendments to the May 1995 letter agreement somehow can be said to have adopted the arbitration requirement. In the May 1995 letter agreement,

4

however, the parties agree to litigate all disputes in "a state or federal court of competent jurisdiction sitting in the State of Indiana." Therefore, there is a specific designation that disputes arising hereunder would be litigated in court and not arbitrated. This designation further reinforces the Court's conclusion that the October 1999 Agreement, along with it's arbitration clause, is a separate agreement applying only to the subject matter of that agreement, namely Sarasota County sales. In sum, Biomet may continue to litigate those claims that are not directly related to Haber's Sarasota County distributorship in the courts.

Where litigation under the October 1999 Agreement may properly take place is the next and final question. Paragraph 16(iv) of the October 1999 Agreement requires that the "place of arbitration be Chicago, Illinois." It is clear that the law in the Seventh Circuit is that "where the arbitration agreement contains a forum selection clause, only the district court *in that forum* can issue a § 4 order compelling arbitration. Otherwise, the clause of § 4 mandating that the arbitration and the order to compel issue from the same district would be meaningless." *Merrill Lynch, Pierce, Fenner & Smith v. Lauer*, 49 F.3d 323, 328 (7th Cir. 1995). Biomet cannot be said to have waived the forum selection clause for the reason that it has preserved for itself the right to litigate those claims it has against Haber not related to the Sarasota territory a court in Hamilton County, Indiana. In the final analysis, then, the Motion to Compel must be **DENIED** because it has been filed in the wrong forum.

**CONCLUSION**

For the reasons stated herein, plaintiff's, Paul Haber, Motion to Compel Arbitration and to Stay State Court Proceedings is **DENIED**; defendants', Biomet, Inc. and Biomet Orthopedics, Inc. Motion to Dismiss Plaintiff's Complaint to Compel Arbitration is **GRANTED**; defendants', Biomet, Inc., and Biomet Orthopedics, Inc., Motion for Oral Argument on Plaintiff's Motion to Compel Arbitration is **DENIED as MOOT**.

IT IS SO ORDERED this 27th day of February, 2008.

_____
LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Electronically distributed to:

Nelson D. Alexander
LOCKE REYNOLDS LLP
nalexander@locke.com

Kevin M. Cloutier
WINSTON & STRAWN LLP
kcloutie@winston.com

Darren Andrew Craig
LOCKE REYNOLDS LLP
dcraig@locke.com

Albert (Bert) James Dahm
LOCKE REYNOLDS LLP
bdahm@locke.com

Michael P. Roche
WINSTON STRAWN LLP
mroche@winston.com

Distributed via U.S. Postal Service to:

Michael S. Elvin
9604 Coldwater Road
Suite 201
Fort Wayne, IN 46825